## GOWANS et al. v. ROCKPORT IRR. CO.

No. 5023. Decided November 18, 1930. (293 P. 4.)

P. C. *Evans*, of Salt Lake City, for appellants.

P. H. *Neeley*, of Coalville, for respondent.

HARRIS, District Judge.

This is an action in equity brought to restrain the collection of an assessment levied against the plaintiffs' stock in the defendant company. It is alleged that the assessment is illegal and void for two reasons: (1) That the persons acting as directors of the company at the meeting at which the levy of the assessment was made were not qualified stockholders of the corporation, and therefore were not qualified to act as directors; and (2) that at the time of the purported levy a portion of a previous levy had not been collected.

It appears that the defendant is an irrigation company furnishing and distributing irrigation water for irrigation purposes to its stockholders. Apparently the only method of securing revenue by the company for the purpose of maintaining its irrigation system and distributing the water to its stockholders is by levy of assessments against the capital stock of the company.

The articles of incorporation of the company provide:

"The capital stock of this corporation, for the purpose of paying expenses, conducting business, or paying debts shall be assessable; but the directors shall have power to levy no more than one (1) cash assessment, not to exceed thirty cents per share for any one year. The directors shall also have power to levy no more than one (1) labor assessment, not to exceed fifty cents per share for any one year, and any assessments desired over and above these assessments in any one year must be authorized by the stockholders at a meet-

ing duly called for such purpose, by a majority vote of all the stock represented at such meeting," etc.

In accordance with the last provision of the foregoing article a stockholders' meeting was duly held at which an assessment of $3 per share was authorized, and the board of directors of the company were directed to make the levy. The plaintiffs were present or represented at this meeting.

Five men had been duly elected and qualified as directors of the company. At a properly noticed directors' meeting three of these directors were present and all voted for the levy. It is contended that only two of the five men were owners of stock in the company, and that the other three, for the reason that they were not stockholders of the company, were disqualified from acting as directors, and that therefore there was no legal meeting of a board of directors and no legal assessment levied against the stock.

The trial court found against the plaintiff and dismissed the suit.

The articles of incorporation of the company provide that no person shall be eligible for office in the company unless he shall own at least two shares of the captial stock of the corporation, and Comp. Laws Utah 1917, § 871 provides that directors shall be stockholders of the company.

The appellant, for the purpose of proving the acting directors were not stockholders in the company, introduced in evidence the stock book of the company. This shows proper stock certificates issued to two of the directors. As to the third, James Vernon, the certificate appears to be issued to "Federal Land Bank of Berkeley, Pledgee, James Vernon" for 35 shares and a similar entry appears as to the fourth director, W. A. Bean, for 45 shares. Apparently these men are farmers using this water right on their respective farms, and it was stipulated that they had pledged their stock to the Federal Land Bank of Berkeley as collateral security for a loan on their farms. This water stock is valuable primarily in so far as it permits the owner to obtain water for irrigation purposes on his farm on which the bank, to pro-

tect its security in the land, had the water certificate issued to it in the manner above set forth. It would thus clearly appear that the parties did not intend by the issuance of the certificate in the above manner that the bank was to become the owner of the water stock but merely held the same as pledgee.

The general rule as to such a transaction is stated in 14 C. J. 731, as follows: "The general property or title to the stock pledged remains in the pledgor, subject to the pledgee's lien, until the stock is sold under foreclosure by pledgee * * * and his character as a stockholder and his relations to the corporation as such are not extinguished by the pledge."

In the case of *Hyams* v. *Bamberger*, 10 Utah 3, 36 P. 202, 204, this court said:

"In the case of a pledge, the debtor continues to be the owner of the property after delivery, subject to the lien of the creditor. * * * The pledgor retains the legal title to the property until it is divested by sale on due notice or by foreclosure in equity."

It is not contended that there had been a sale of this stock by the bank in foreclosure or upon notice, and no special facts or circumstances are made to appear that would indicate an intention on the part of the parties that by the issuance of these stock certificates as above set forth that it was the intention of the parties that the bank was to become the owner of the stock or anything more than the ordinary pledgee, and we therefore see no reason why the general rule above mentioned should not apply. So that, as against a collateral attack at least, we conclude that Vernon and Bean were the owners of this stock and were therefore not disqualified to act as directors of the company. By what is said it is not intended to hold that there might not be a set of facts and circumstances presented where a party pledging his stock might make such an agreement of pledge that the pledgee might be considered the owner of the stock, but all that we determine is that this is not such a case.

As to the fifth director, Charles Gibbons, the stock book introduced in evidence failed to disclose that any certificate of stock had been issued in his name. Mr. Gibbons was called as a witness, and, without objection, testified that for the past four or five years he had been and was the owner of 48 shares of the stock of the corporation. The record is silent as to the status of his stock certificate. This is a collateral attack on the right of Mr. Gibbons to act as a director of the company. Neither the statute nor the articles of incorporation expressly require such directors to be owners of stock of record on the books of the company. The presumption is in favor of the regularity of the authority of directors in a collateral attack. *Jones* v. *Bonanza Mining Co.*, 32 Utah 410, 91 P. 273.

Since he testified that he was the owner of the stock, it may be presumed that the certificate of his stock has been properly indorsed and delivered to him by his predecessor in interest. In such case, under Comp. Laws Utah 1917, § 878, as between the parties, delivery of the stock certificate, together with a written transfer of the same signed by the owner, would be sufficient to transfer the title to the purchaser without the transfer on the books of the company. This action was commenced before the "Uniform Stock Transfer Act," chapter 55, Laws Utah 1927, took effect, and therefore that chapter may not be considered in this case.

Appellants rely on the case of *In re Argus Printing Co.*, 1 N. D. 434, 48 N. W. 347, 12 L. R. A. 781, 26 Am. St. Rep. 639, which held that under the circumstances of that case the pledgee and not the pledgor had the right to vote at the election of directors. There the stock was unconditionally transferred from name of pledgor to name of pledgee. Also there was an express statutory provision that pledgor might might not vote the stock after the transfer, and also that pledgee became liable as stockholder for contribution for debts of the company.

204

Neither the facts as to transfer nor the statute are the same as in this case, and therefore the case is not controlling here. Other cases cited by appellants holding pledgee liable for assessments on stock of defunct banks are not controlling here.

Next it is contended that the assessment is void because a portion of the 1921 assessment has not been collected. Comp. Laws Utah 1917, § 903, provides: ■

"No assessment shall be levied while a portion of a previous one remains unpaid, unless: 1. The power of the corporation has been exercised in accordance with the provisions of this chapter for the purpose of collecting such previous assessment; 2. The collection of such previous assessment has been enjoined. * * *"

It appears that small amounts of a cash levy for 1921 against several stockholders totaling something like $85 have never been collected. It further appears, however, that each year since that time from 1921 to 1927, at the annual stockholders' meeting of the company, an assessment was authorized; that plaintiffs were present at each meeting or represented by proxy; that they made no objections to the levy and each year up until 1927 paid their respective assessments. The trial court held that such conduct on the part of plaintiffs estopped them from attacking this assessment under the above statute. This is in accord with the repeated holdings of this court, and no good purpose could be served by further review of these cases and the reasons therefor. *Hatch* v. *Lucky Bill M. Co.*, 25 Utah 405, 71 P. 865; *Jones* v. *Bonanza M. Co.*, 32 Utah 440, 91 P. 273; *Smith* v. *Sinaloa Land & Fruit Co.*, 42 Utah 445, 132 P. 556.

We find no error in the record. The judgment is affirmed. Respondent is awarded its costs.

CHERRY, C. J., and STRAUP, ELIAS HANSEN, and FOLLAND, JJ., concur.

EPHRAIM HANSON, being disqualified, did not participate herein.