FIRST MERCHANTS NATIONAL BANK & TRUST COMPANY
OF LAFAYETTE, ETC. *v.* MURDOCK REALTY
COMPANY ET AL.

[No. 16,711. Filed February 13, 1942. Rehearing denied
March 24, 1942. Transfer denied May 1, 1942.]

228

*Vint D. Vaughan* and *Charles L. Vaughan,* both of Lafayette, for appellant.

*Walter Myers, Donald L. Smith,* and *Walter Myers, Jr.,* all of Indianapolis, *Fraser & Isham,* of Fowler, *Crumpacker & Friedrich* and *Jay E. Darlington,* all of

Hammond, and *David Stoneman,* of Boston, Massachusetts, for appellees

STEVENSON, J.—The appellant brought this action on certain notes executed by certain appellees, hereinafter mentioned, and to foreclose a mortgage, allegedly given to secure the payment of the same.

The first paragraph of complaint alleged that the appellee, Murdock Realty Company, was indebted to the appellant bank on two notes, totaling $64,219.80, and was also liable as endorser on a note originally executed by John G. McKee in the sum of $3,500.00, which amount the first paragraph of complaint alleged was secured by a mortgage executed by the Murdock Realty Company on certain real estate located in Tippecanoe County. Copies of said notes and mortgage were set out in complaint. The first paragraph of complaint sought judgment on the notes and a foreclosure of the mortgage.

The second paragraph of complaint alleged that Charles L. Murdock was also indebted to the appellant bank and as evidence of such indebtedness had executed his promissory note payable to the appellant bank in the sum of $41,620.00. The complaint further alleged that the appellees, Mary L. O'Hearn and Frank J. O'Hearn, were also indebted to the appellant bank, as evidenced by their promissory note in the sum of $28,243.76, and that to secure the payment on said obligations the Murdock Realty Company executed the mortgage in suit on real estate located in Tippecanoe County. The mortgage contained the provision that,

"This mortgage is given for the benefit and security of the respective owners and holders of the obligations hereinafter specified, and to secure the payment of each of said respective obligations to the respective owners and holders thereof on or before one hundred twenty (120) days from date

hereof, . . . and the mortgagor herein expressly guarantees the payment of each and all of said obligations according to their tenor and effect on or before one hundred twenty (120) days from date hereof."

The obligations above mentioned were then set out in the mortgage, and listed and included obligations heretofore mentioned of the Murdock Realty Company, of Charles L. Murdock, Mary L. O'Hearn, John G. McKee, and also included a note of $15,000.00 signed by Charles L. Murdock payable to the Merchants National Bank of Indianapolis. The Merchants National Bank of Indianapolis, appellee herein, filed an answer and cross-complaint alleging that it was the beneficial owner of this mortgage to the extent that it secured the $15,000.00 note which Murdock personally owed to it, and asked that the mortgage be foreclosed for the additional sum of $15,000.00.

The appellee P. Edward Fardy filed petition for leave to intervene which was granted upon the consent of all parties; and, thereupon, the appellee Fardy filed his answer in which he alleged that he was acting as a minority stockholder in the Murdock Realty Company for the benefit of himself and such other stockholders as might desire to join therein. In this petition, the appellee Fardy alleged that the board of directors of the Murdock Realty Company consisted of Charles L. Murdock, as president and director, his sister, Mary L. O'Hearn, and one F. D. Hollensbe. The petition alleged that these officers and directors of the corporation dominated and controlled the affairs of the corporation. The petition alleged that the corporation was the owner of the real estate described in the mortgage, which property was commonly known as the Lahr Hotel in Lafayette, Indiana, which property was the principal asset of the Murdock Realty Company.

The petition alleged that appellee Murdock was a large stockholder in the appellant bank, that F. D. Hollensbe was an employee of the appellant bank, that he and his sister were personally indebted to the appellant bank in large sums, and that the mortgage in suit was executed to the bank, not only to secure the corporations debt, but also to secure the individual debts of appellee Murdock and his sister, Mary L. O'Hearn, and that the corporation received no consideration whatever for the execution of such mortgage, in so far as it secured the individual debts of the appellees.

The petition further alleged that it was useless to demand that the directors of the Murdock Realty Company defend this action for the benefit of the stockholders, and concluded with a prayer that an accounting be had between the Murdock Realty Company and the appellant bank to determine the exact amount of the indebtedness due to the bank, and prayed that the mortgage be declared null and void, except in so far as it secured the indebtedness of the Murdock Realty Company.

To this petition, the appellant filed an answer in which it asserted that the Murdock Realty Company was a family corporation, in which all of the stock was owned by Charles L. Murdock and Mary L. O'Hearn, except one share owned by Frank D. Hollensbe. This answer alleged that Charles L. Murdock, as president of the Murdock Realty Company, represented to the appellant that the ownership of stock was as alleged, and that there was nothing in the records of the Murdock Realty Company showing Fardy to be a stockholder. The answer alleged that the appellant relied upon the records of the Murdock Realty Company, and made an additional loan of $18,151.20 to the Murdock Realty Company in consideration of its execution of

the mortgage sued upon. The answer prayed that appellee Fardy be estopped to set up any interest or claim in or for the Murdock Realty Company. Answers were filed by other appellees alleging, generally, failure of consideration and payment of the obligations involved.

The cause was submitted to the court for trial. After hearing the evidence, the court entered a decree in favor of the appellant and against the Murdock Realty Company for the sum of $73,840.00 and the further sum of $5,000.00 as attorneys' fees, and after allowing a credit for money on deposit, finally decreed that the appellant have judgment for $56,315.47, and entered a decree of foreclosure in favor of the appellant for this amount. The court rendered a personal judgment against Charles L. Murdock for $57,565.34, which represented his individual indebtedness to said appellant, and the court also rendered judgment in favor of the Merchants National Bank of Indianapolis on its cross-complaint in the amount of $20,822.50. The court rendered no personal judgment against Mary L. O'Hearn and Frank D. Hollensbe for the reason that jurisdiction over them was obtained by publication.

A motion for new trial was filed and overruled, and this appeal has been perfected. The only error assigned on appeal is the alleged error in overruling the appellant's motion for a new trial. Under this assignment of error, the appellant contends that the appellee Fardy was erroneously permitted to intervene as a minority stockholder; that his right to defend for and on behalf of the corporation could only be maintained upon proof that the directors of the corporation refused to defend, and in no event can he assert any defense not available to the corporation. The appellant further contends that the appellee Fardy was not the

owner of any stock in the Murdock Realty Company but was only a pledgee of such stock.

Under the contention that Fardy was not a proper intervenor, the appellant insists that the evidence discloses that the books of the Murdock Realty Company showed no transfer of stock to him in any capacity, and the stock in possession of Fardy, if any, was only in his possession as a pledgee. The appellant insists that such pledgee was not entitled to appear and assert any defense where the corporation itself is appearing and actively defending.

The evidence in this case disclosed that a certificate for four hundred shares of stock, formerly owned by Charles L. Murdock in the Murdock Realty Company, had been endorsed in blank by Charles L. Murdock and delivered to Fardy, who was in possession of such stock certificate at the time of the trial of this case. The evidence further disclosed that on October 31, 1931, the said Charles L. Murdock executed his note to appellee Fardy for the sum of $10,000.00, which note recited that four hundred shares of stock in the Murdock Realty Company, evidenced by certificate of stock No. 11, had been deposited with the appellee Fardy as collateral security for the payment of said obligation. On that date a certified check for $9,750.00 was given by Fardy to Charles L. Murdock in completion of the loan. There is further evidence from which the court might reasonably infer that upon default in payment of this note Fardy offered for sale the stock held by him as collateral security for the payment thereof, and became the purchaser thereof at such sale.

In the light of these facts, it is our opinion that the appellee Fardy had such an interest in the Murdock Realty Company as entitled him to appear in this action.

The delivery of a certificate of stock endorsed in blank is sufficient under our law to transfer title. § 25-701, Burns' 1933. But whether Mr. Fardy ██ had legal title to the stock in question or only held the same as pledgee is immaterial for the purposes of this case. As was said by our Supreme Court in a recent case involving a similar question:

> "We are not called upon to determine whether the paper constituted an unqualified legal pledge. It certainly was sufficient to authorize the holder to maintain an action in equity against the officers of the corporation to prevent them from dissipating its assets and to set aside the fraudulent transfer of the same, especially when the rights of innocent parties had not intervened. The amended complaint stated a cause of action on that theory." *General Ice & Coal Co.* v. *George, Tr.* (1938), 214 Ind. 518, 522, 14 N. E. (2d) 1002.

The evidence is undisputed in this case that the officers of the Murdock Realty Company had executed a mortgage on the property owned by the corporation to secure approximately $85,000.00 of the individual debts of the officers thereof. The stockholders of the corporation have a right, under such circumstances, to prevent the officers of such corporation from dissipating its assets and to contest their action when the same has been attempted.

The evidence further discloses that the affairs of the Murdock Realty Company were under the control of its president, Charles L. Murdock, and his sister, ██ Mrs. O'Hearn, who owned the majority of the stock. They were the officers of the corporation at the time the mortgage was executed, and they were the officers of the corporation at the time this suit was filed. Under such circumstances, the fact that the corporation has appeared in the litigation and filed an

answer does not prevent a minority stockholder from appearing in such action, to contest for and on behalf of the corporation the legality of the acts of the corporate officials. These officials were the persons whose conduct was in question. It would have accordingly been an idle gesture for the minority stockholders to demand that such officials defend this action for the corporation. No such demand was accordingly necessary. As was said by our Supreme Court:

> " 'There are occasions when the allegation that the stockholder has requested the directors to bring suit and they have refused, may be omitted, since the request itself is not required. This occurs when the corporate management is under the control of the guilty parties. No request need then be made or alleged, since the guilty parties would not comply with the request; and even if they did the court would not allow them to conduct the suit against themselves.' . . .
>
> "Mr. Waterman, in his work on Corporations, vol. 1, page 467, says: 'The corporation may call its officers to account if they wilfully abuse their trust or misapply the funds of the company; and if it refuses to sue, or is still under the control of those who must be made defendants in the suit, the stockholders, who are the real parties in interest, may file a bill in their own names, making the corporation a party defendant, or part of them may file a bill in behalf of themselves and all others standing in the same relation.' " *The Wayne Pike Company* v. *Hammons* (1891), 129 Ind. 368, 376, 27 N. E. 487.

The officers of this corporation were its agents and, as such, were bound by the same rules of law applicable to other agents. Honesty, and fair dealing with the assets of the corporation, which they represented, prevented them from using the assets of the corporation for their own private gain.

"General public policy prevents a person from deriving a benefit to himself or working a wrong to another through a fiduciary relationship existing between the parties. Such a transaction is constructively fraudulent and hence may be impeached between persons sustaining the relationship. Such is the character of the relationship which exists between the officers of private corporations and the corporation. They are its agents and they are governed by the rules of law applicable to other agents, and as between themselves and their principal in so far as such rules relate to honesty and fair dealing in the management of the affairs of their principal. They must not in any degree allow their official conduct to be swayed by their private interest which must yield to official duty." *Leader Pub. Co.* v. *Grant Trust, etc., Co.* (1915), 182 Ind. 651, 661, 108 N. E. 121.

We are not impressed with the appellant's contention that the Murdock Realty Company, having executed the mortgage in suit, is not now permitted to question its legality and, therefore, the minority stockholders are precluded from making such a defense. This argument, followed to its logical conclusion, would forever preclude a corporation, through its stockholders, from challenging the conduct of its corporate officers, when such officers once become enemies of the corporation and embark upon a conspiracy to rob it of its assets. The law has recognized the right of stockholders themselves to institute or defend actions where one or more of the following conditions are present:

" '(1) Some action, or threatened action, by the board of directors or trustees, beyond their power; (2) a fraudulent transaction, completed or contemplated by the acting managers, in connection with some other party or among themselves, causing injury to the corporation or stockholders; (3) action by the board of directors, or a majority of them, in their own interest, and in a manner de-

structive of the corporation, or the rights of the other stockholders; (4) where a majority of the stockholders are illegally or oppressively pursuing a course in the name of the corporation, which is in violation of the right of the other stockholders, and can only be restrained by a court of equity.' " *Marcovich* v. *O'Brien, Auditor* (1916), 63 Ind. App. 101, 111, 114 N. E. 100.

When the officers of the Murdock Realty Company executed a corporate mortgage to secure the payment of their individual debts they violated their duty as corporate officers, and such conduct gave rise to a condition which authorized intervention on behalf of non-consenting stockholders. The appellee Fardy had acquired an interest in this corporation long before the mortgage in suit was executed and the fact that he had acquired this stock from the president of the corporation, whose conduct is now questioned, does not in any way preclude him from setting up as a defense the invalidity of this mortgage. The rule is generally recognized that,

"The right to enforce a corporate mortgage may depend upon the propriety of the purpose for which the mortgage was given. A mortgage given by a corporation, without express statutory authority to secure the payment of the individual debts of its officers or stockholders, is not enforceable against the rights of creditors whether they become such prior or subsequent to the execution of the mortgage." 13 Am. Jur., § 833, p. 837.

The appellant contends, however, that the corporation had a right to mortgage its real estate to secure the payment of its obligations and that the mortgage is, therefore, a valid and binding obligation. The appellant further contends that the defense of *ultra vires* is not available to the appellees or any of them. While the right to convey or mortgage real estate

owned by a corporation is generally recognized as within its corporate powers, yet, this right is limited to the furtherance of the legitimate business of the corporation. This proposition is recognized by our own court in the case of *Warren Creamery Co.* v. *Farmers State Bank* (1924), 81 Ind. App. 453, 143 N. E. 635. On the other hand, "The proposition is well supported by authority that it is ultra vires of a corporation to enter into contracts of guaranty or suretyship not in furtherance of its business, unless given express authority to do so." 13 Am. Jur., § 819, p. 827.

It seems clear to us, however, that the action of the Murdock Realty Company in mortgaging its assets to secure or guarantee the payment of the individual debts of its corporate officers to an amount totaling $85,000.00 could not, by any stretch of the imagination, be said to be a furtherance of the business of the corporation. The evidence discloses that the Murdock Realty Company was in debt to the appellant to an amount in excess of $45,000.00, and there is evidence that at the time of the execution of this mortgage an additional loan of $18,018.51 was made in consideration of the execution of the mortgage in suit and the guaranty on the part of the company of the payment of the personal obligations of the officers of the company. The appellant bank, at the time it entered into this transaction, insisted that this mortgage be given to secure and guarantee the payment of these individual debts. The appellant knew that such guaranty on the part of the corporation was not and could not be an act in furtherance of the corporate business. As was said by the Supreme Court of Illinois in the case of *Best Brewing Co.* v. *Klassen* (1900), 185 Ill. 37, 41, 57 N. E. 20;

" 'It is no part of the ordinary business of commercial corporations, and, *a fortiori*, still less so if non-commercial corporations, to become surety for others. Under ordinary circumstances, without positive authority in this behalf in the grant of corporate power, all engagements of this description are *ultra vires*, whether in the indirect form of going on accommodation bills, or otherwise becoming liable for the debts of others. . . .' "

The appellant bank cannot bring this transaction within the realm of promoting the legitimate business of the Murdock Realty Company by demanding a contract of guaranty as a condition upon which the additional loan of $18,000.00 was granted. As was said by the Supreme Court of Washington, in the case of *Hess* v. *Cedarhome Lumber Co.* (1926), 139 Wash. 107, 117, 245 P. 753, 47 A. L. R. 71:

" ' "Undoubtedly the general rule is that one who receives from an officer of a corporation the notes or securities of such corporation, in payment of, or as security for, a personal debt of such officer, does so at his own peril. *Prima facie* the act is unlawful, and, unless actually authorized, the purchaser will be deemed to have taken them with notice of the rights of the corporation." ' "

See also *Wheeler* v. *Home Savings Bank* (1900), 188 Ill. 34, 58 N. E. 598; Fletcher Cyclopedia Corporations, Vol. 6, p. 369, Vol. 7, p. 207.

The appellant contends that the additional loan of $18,000.00 coupled with an extension of time in which to pay the then existing indebtedness of the Murdock Realty Company is a sufficient consideration in law to support the contract of guaranty. The appellant, however, has offered no proof that the Murdock Realty Company had any power to bind itself on such a contract. The rule is that, "It can make no

difference that the corporation is indirectly benefited by the contract, or receives a consideration, if the contract is not within the scope of its business, . . ." Fletcher Cyclopedia Corporations, Vol. 6, p. 373.

The decree of the trial court permitted the appellant to enforce its mortgage against the Murdock Realty Company as security for all moneys loaned by the appellant to the corporation. This amount, when paid, discharges its obligation to the appellant. We can find no basis either in law or equity sufficient to warrant the court in taking from the assets of this corporation an additional $85,000.00 for the purpose of satisfying the individual debts of the corporate officials.

It is our opinion that the trial court did not err in overruling the appellant's motion for a new trial. Finding no reversible error, the judgment of the trial court is affirmed.

Judgment affirmed.

Flanagan, J., not participating.

NOTE.—Reported in 39 N. E. (2d) 507.