FARDY ET AL. *v.* MAYERSTEIN.

[No. 27,825. Filed March 17, 1943. Rehearing denied April 15, 1943.]

*Walter Myers, Walter Myers, Jr.,* and *Donald L. Smith,* all of Indianapolis, *Crumpacker & Friedrich* and *Jay E. Darlington,* all of Hammond, *Frazer & Isham,* of Fowler, and *David Stoneman,* of Boston, Mass., for appellants.

*Allison E. Stuart, Brenton A. Devol, Roger D. Branigin, Cable G. Ball,* and *Michael T. Ricks,* all of Lafayette, for appellee.

RICHMAN, C. J.—Appellee filed a complaint against Murdock Realty Company on two notes and to foreclose a mortgage to secure the notes, all executed by it July 19, 1932, to the First Merchants National Bank of Lafayette, trustee. An assignment of the notes and mortgage by the mortgagee to the appellee is alleged. Murdock Realty Company filed answer in three paragraphs. We are not concerned with these issues.

With the consent of the parties appellant Fardy was permitted to intervene and filed a pleading designated an intervening petition seeking to cancel the mortgage and for an accounting. It alleges,

". . . that petitioner is the owner of 450 shares of said capital stock of said Murdock Realty Company, and has been continuously a stockholder of said corporation since March 15th, 1932.

"That he brings this petition in his derivative capacity as a minority stockholder of said Murdock Realty Company for the benefit of himself and such other stockholders as may desire to join herein."

To this petition appellee filed answer in denial and an affirmative answer. There was a trial and general finding for appellee against Murdock Realty Company in the sum of $40,324.39 and $2,500.00 attorneys' fees and that the mortgage be foreclosed. The court also found that appellant Fardy should take nothing by his intervening petition. Judgment followed the finding. A motion for new trial was filed which states: "Comes now the intervenor, P. Edward Fardy; and comes also defendant Murdock Realty Company, a corporation, by P. Edward Fardy, a stockholder thereof, on his own behalf and on behalf of all other stockholders similarly

situated, and each separately and severally moves the court to grant a new trial" for the reasons that the decision of the court was contrary to law and not sustained by sufficient evidence. The only error assigned is the overruling of this motion for new trial.

No issue is presented for our decision except such as arises upon appellant Fardy's assertion that he is a stockholder suing in behalf of himself and all other stockholders similarly situated. If from the evidence the trial court might reasonably have drawn the inference that he was not a stockholder, the general finding against him is conclusive.

The evidence discloses that whatever rights he has against Charles L. Murdock or the Murdock Realty Company and whatever interest he may have in this litigation arise out of a loan by him to Murdock and a pledge of a certificate for 400 shares of stock of Murdock Realty Company issued in the name of Charles L. Murdock, endorsed by him in blank and delivered to Fardy as a pledge for the payment of said loan. The loan was evidenced by a note dated October 31, 1931, by which Murdock agreed to pay Fardy six months after date $10,000 with interest at the rate of 6% per annum,

> ". . . having deposited with this obligation as Collateral Security, 400 shares of Murdock Realty Company certificate #11 . . . with the right to call for additional security should the same decline, and with authority to sell the same or any collaterals substituted for or added to the above, without notice, either at public or private sale or otherwise, . . . And it is further agreed that the holder or holders hereof may purchase at any public sale."

There is evidence that in the summer of 1932 after the maturity of the note there was an attempted public sale of the certificate of stock and a purchase thereof

by Fardy by acceptance of his bid of one thousand dollars. The note which was in evidence discloses no credit of that sum. The stock certificate was never surrendered for cancellation and issuance of new certificate to Fardy but at all times up to the date of the trial the stock stood of record in the name of Murdock on the books of the corporation.

The evidence most favorable to appellee as to the public sale was that it was held in Fardy's office in Boston and no one was present except his brother, himself and an auctioneer. There is no evidence of any notice of public sale. Fardy testified that he notified Murdock but no notice was produced. From this evidence the trial court could properly have found that there was no public sale. *Louisville Trust Co.* v. *Drewry* (1936), 266 Ky. 279, 98 S. W. (2d) 900; *Turk* v. *Grossman* (1939), 176 Md. 644, 6 A. (2d) 639; *Ralston, Auditor, et al.* v. *State ex rel. Horn, Trustee* (1941), 218 Ind. 591, 34 N. E. (2d) 930; *Eppert* v. *Lowish* (1930), 91 Ind. App. 231, 168 N. E. 616, 169 N. E. 884.

Ordinarily, because of the fiduciary relationship created by the pledge, a pledgee may not purchase the subject of the pledge at his own sale. 41 Am. Jur., *Pledge and Collateral Security* § 90, and notes in A. L. R. therein cited. The same text, § 93, states that "the provisions in a pledge agreement authorizing the pledgee to purchase the property will be strictly construed, being in derogation of the common law; . . ."

The pledge agreement before us gives the pledgee the right to purchase at public sale but by necessary implication excludes his right to purchase at private sale. So there can be no valid contention that the sale, though not public, terminated the pledge

and constituted Fardy the owner of the stock. He had no greater rights after than before the alleged public sale.

A pledge of stock does not divest the pledgor of his ownership. "The general property in the stock remains in him, subject to the pledgee's lien, and until the stock is sold under foreclosure by the pledgee; . . .". 12 Fletcher Cyc. Corp. § 5644; 18 C. J. S. *Corporations* § 425; *Mobley* v. *Macon National Bank* (1932), 174 Ga. 256, 162 S. E. 708, 82 A. L. R. 560; *Gowans et al.* v. *Rockport Irr. Co.* (1930), 77 Utah 198, 293 P. 4; *Corney* v. *Saltzman et al.* (1927), C. C. A. 2d, 22 Fed. (2d) 268.

While a pledgee has certain special property interests in the subject of a pledge, which we need not here discuss, they are not such, in our opinion, as to give him in a class action brought for the benefit of stockholders the right to speak either for or in the stead of his pledgor or for any other owner of stock.

The petition herein planted Fardy's rights on his being "the owner of 450 shares of said capital stock of said Murdock Realty Co." The record very clearly shows that the cause was tried upon the theory that his alleged ownership of the stock was by virtue of the so-called public sale. One of appellee's attorneys made three trips from Lafayette, Ind., to Boston, Mass., for the purpose of investigating and obtaining evidence concerning Fardy's status. A deposition of Fardy taken on one of these trips by this attorney was the first and principal evidence introduced by appellant Fardy to sustain his right to relief. It deals principally with the facts surrounding the alleged sale. Joseph A. Flynn of Boston attended the trial at Lafayette to testify as to his presence at the sale and what transpired. Not only was this a vital issue below but appel-

lant Fardy here contends that the evidence is conclusive that the sale was public and freely italicizes statements in the recital of the evidence by which he evidently considers that fact to be established.

We might say, in passing, that neither italics nor parenthetical remarks by way of argument have any place in a statement of the record. Instead of aiding the court, they are confusing and frequently require resort to the record to determine the facts as distinguished from appellant's theories.

Inasmuch as the cause was tried upon the theory of ownership by reason of purchase at public foreclosure sale and the court could reasonably have found on the evidence that no such sale occurred, the judgment must be affirmed. There are, however, certain contentions which we think should be discussed even though unnecessary to the decision.

The case of *First Merchants National Bank and Trust Co.* v. *Murdock Realty Co.* (1942), 111 Ind. App. 226, 39 N. E. (2d) 507, 511, in which transfer to this court was denied, involved issues similar to those in the case at bar. Fardy was an intervenor claiming to defend as a stockholder in behalf of stockholders. The trial court found in his favor. The court said (p. 235, 236):

> "There is further evidence from which the court might reasonably infer that upon default in payment of this note Fardy offered for sale the stock held by him as collateral security for the payment thereof, and became the purchaser thereof at such sale.
>
> "In the light of these facts, it is our opinion that the appellee, Fardy, had such an interest in the Murdock Realty Company as entitled him to appear in this action."

The opinion does not disclose the terms of the pledge nor the evidence as to the sale. The quoted statement

may be sustained as sound on the assumption that the contract of pledge authorized Fardy to become a purchaser at his own sale.

Immediately after the language last above quoted the Appellate Court says:

> "The delivery of a certificate of stock endorsed in blank is sufficient under our law to transfer title. § 25-701, Burns' 1933. But whether Mr. Fardy had legal title to the stock in question or only held the same as pledgee is immaterial for the purposes of this case. As was said by our Supreme Court in a recent case involving a similar question:
>
> " 'We are not called upon to determine whether the paper constituted an unqualified legal pledge. It certainly was sufficient to authorize the holder to maintain an action in equity against the officers of the corporation to prevent them from dissipating its assets and to set aside the fraudulent transfer of the same, especially when the rights of innocent parties had not intervened. The amended complaint stated a cause of action on that theory.' *General Ice & Coal Co.* v. *George, Tr.* (1938), 214 Ind. 518, 522, 14 N. E. (2d) 1002."

This entire paragraph, in view of the preceding statement, must be classed as dictum. Denial of a petition to transfer does not indicate our approval of all language of the opinion under consideration. Dicta must be read in relation to the decision. It would be an unnecessary duplication of effort for us to take over every case containing loose or even erroneous statements which, when read in the light of the facts with which the Appellate Court was dealing, are not likely to mislead courts and lawyers in the future disposition of cases.

As between the parties the Uniform Stock Transfer Act does not make an owner out of a pledgee against

the express terms of a written contract between them. If there were any case so holding we should expect to find it among cases cited in Vol. 6 of the Uniform Laws Annotated. While there are numerous statements in the cases therein cited which pieced together might afford argument for such result, we find no decision squarely in point. The purpose of the statute was not, primarily at least, to determine ownership but to make uniform in the states the method of transferring title where such transfer is necessary to carry into effect contracts for disposition of stock. Incidental to many of such transactions ownership is determined and, in the case of bona fide purchase for value, may be established contrary to the intention of the holder of record. But we are not now concerned with such matters. It is sufficient here to say that where there is an express contract by the owner of record creating a pledge to secure his debt, the other party to the contract becomes a pledgee with, as the cases say, a lien upon the stock. One does not have a lien upon his own property. He may convert the lien into ownership by foreclosure. His unsuccessful attempt so to do in this case left him with the status of pledgee.

It is true, as held in *General Ice & Coal Co.* v. *George, Trustee* (1938), 214 Ind. 518, 14 N. E. (2d) 1002, that a pledgee of stock may maintain an action to prevent dissipation of the assets of the corporation. There he sued for himself as a pledgee. Here he sued for the stockholders as a stockholder and the court found against him on the issue of his ownership of stock.

The case of *Crowley* v. *First Merchants National Bank* (1942), 112 Ind. App. 80, 41 N. E. (2d) 669, is also relied upon. On the point now before us it seems that the Appellate Court relied upon the earlier case

(111 Ind. App. 226, 39 N. E. (2d) 507) without recognizing that in it the finding was for Fardy and would be sustained if supported by sufficient evidence while in the Crowley case the finding was against Fardy. Whether the evidence was the same in the two cases or whether in either of them the facts as to the attempted foreclosure of the pledge were similar to those now before us we do not know and need not determine. Petition to transfer the Crowley case was dismissed because it did not comply with the rules of this court. If the effect of that case is contrary to our holding herein, it is disapproved.

Appellant says the sale was a valid public sale under Massachusetts law of which we must take judicial notice. There was no such issue presented by the pleading. The Uniform Judicial Notice of Foreign Law Act, § 2-4801, Burns' 1933 (Supp.), § 251-1, Baldwin's Supp. 1937, dispenses with proof but not with pleading.

*National Mill Supply Co.* v. *State ex rel. Morton* (1937), 211 Ind. 243, 6 N. E. (2d) 543, 109 A. L. R. 1101, is not in point. Appellant Fardy, choosing to rely upon the status of stockholder and having the burden of proving the allegation of his petition, undertook to show that he became such as a purchaser at public sale and failed in his proof.

The judgment is affirmed.

NOTE.—Reported in 47 N. E. (2d) 315.

ON PETITION FOR REHEARING.

RICHMAN, C. J.—In a petition for rehearing appellant questions the validity of the statement in the original opinion that "The Uniform Judicial Notice of Foreign Law Act . . . dispenses with proof but not with pleading." It would have been

better to say that § 4 of the act, § 2-4804, Burns' 1933 (Supp.), § 251-4, Baldwin's Supp. 1937, requires that one asking that judicial notice be taken of foreign law must give reasonable notice "to the adverse parties either in the pleadings or otherwise." There is no such notice shown in the record. This section is annotated by the National Conference of Commissioners on Uniform State Laws in 9 Uniform Laws Annotated, p. 272, as follows:

"It is here provided that the party invoking the foreign law must give reasonable notice.

"There are strong reasons for it:

"In the first place, it is in analogy to the rule of pleading that if a foreign law is relied upon, it must be pleaded. This is now the law of several States. In such States the other party gets notice from the pleadings. But in the States where the pleading rule does not obtain, then if the Court may take judicial notice of such law, fairness requires that the opponent should be warned beforehand, so that he may prepare on that law. For example, if a plaintiff sued in Minnesota for damage done to freight by a railroad, and on the trial the plaintiff invokes the law of Illinois because the bill of lading was issued in Illinois, and if the plaintiff is ready with books of Illinois law, it is unfair to the opponent not to have given him notice that the Illinois law will be relied upon. This point is illustrated in the recent case of *Corbett* v. *Terminal Ass'n*, 1935, 336 Mo. 972, 82 S. W. 2d 97, 102, where the Supreme Court was interpreting their statute of 1927 (corresponding to Sec. 1 of the present Draft Act), and held that the defendant, relying upon an Illinois law, could not on appeal ask that judicial notice be taken because he had neither pleaded it, nor asked the Court below to notice it. The Massachusetts Supreme Court decided the same point in 1928, Lennon v. Cohen, 1928, 163 N. E. 63, 264 Mass. 414. And in the Rule of Court proposed in 1932 by the Massachusetts Judicial Council, it is expressly provided that 'it shall be the duty of

counsel to call to the attention of the Court such authorities as they wish the Court to consider.' "

See *Prudential Insurance Company* v. *Shumaker* (1940), 178 Md. 189, 12 A. (2d) 618.

Appellant cites 41 Am. Jur. *Pleading* §§ 9, 13 as declaring a different rule. The text in each section is based principally upon *Loranger* v. *Nadeau* (1932), 215 Cal. 362, 365, 10 P. (2d) 63, 64, 84 A. L. R. 1264, wherein the court says: "If the science of pleading be strictly pursued it would seem to follow that since the foreign law now comes into the case by judicial knowledge as a fact, it would still be necessary to plead it, and the judicial knowledge would merely dispense with the proof." Thus indicating its approval of the proper rule, the court goes on to say that in California the cases have held otherwise and declines to deviate from previous decisions. It will be observed that the California court was not dealing with the Uniform Act which was not formulated until 1936. It has been adopted in but a few states. If it is to continue to be uniform, we should interpret it in the manner suggested by the Commissioners and followed in *Prudential Insurance Company* v. *Shumaker, supra.*

If we were to take judicial notice of the Massachusetts cases our conclusion in this appeal would be the same as stated in the original opinion. There is nothing peculiar about the common law of Massachusetts with respect to the elements necessary to constitute a public sale. Five cases are relied upon by appellant. *Seder* v. *Gould* (1931), 274 Mass. 223 174 N. E. 311, 76 A. L. R. 700, decides nothing on the subject. The parties stipulated that the sale was in accordance with the terms of the note. The questions decided concerned the consequences of the sale. In *Farmers' Nat. Bank* v. *Venner* (1906), 192 Mass. 531, 78 N. E. 540, the trial

court, on evidence quite different from that in the case at bar, found that there had been a valid public sale, and the reviewing court quite properly declined to disturb the finding. The principal contention to the contrary was based on alleged inadequacy of price. In *Winchester Rock & Brick Co.* v. *Murdough* (1919), 233 Mass. 50, 123 N. E. 344, the court, stating that the trial court's "finding will not be reversed unless plainly wrong" affirmed a decree. The pledge considered therein gave the pledgee the right to purchase at either private or public sale. The principal concern of both courts was, not whether the sale was public or private, but whether it was "made in good faith without intent to take advantage." To the same effect is *Learned* v. *Geer* (1885), 139 Mass. 31, 29 N. E. 215. In the other case, *Downer* v. *Whittier* (1887), 144 Mass. 448, 11 N. E. 585, the only question was whether the pledgor had waived notice of a private sale. We find in none of these five cases any suggestion that on the facts here in evidence the Massachusetts Supreme Court would reverse a finding of a nisi prius court that the sale was not public.

The petition for rehearing is denied.

NOTE.—Reported in 47 N. E. (2d) 966.