**HUNTINGBURG PRODUCTION CREDIT ASSOCIATION, Plaintiff-Appellant,**

v.

**Robert Allen GRIESE, Judith Ann Griese, Ferris E. Traylor, Mary Vaughn Traylor, Floyd N. Lemmons, Margaret J. Lemmons, Griese-Traylor Corp., a Florida Corporation, Defendant-Appellees.**

**No. 1–1182A328.**

Court of Appeals of Indiana, First District.

Nov. 23, 1983.

**450**

Brian K. Carroll, Edwin W. Johnson, Johnson, Carroll & Griffith, Evansville, for appellant.

Michael K. Phillips, Phillips & Long, P.C., Boonville, for Floyd N. and Margaret J. Lemmons.

## STATEMENT OF THE CASE

NEAL, Judge.

Plaintiff-appellant Huntingburg Production Credit Association (Production Credit) appeals from an order of the Warrick Circuit Court, which granted Production Credit's motion for summary judgment, in part and granted plaintiffs-appellees [1] Floyd N. Lemmons and Mary Vaughn Lemmons' (Lemmons) motion for summary judgment, in part, in finding that Production Credit took only a purchase money lien on two tracts of land on which Production Credit held mortgages.

We affirm in part and reverse in part.

## STATEMENT OF FACTS AND ISSUES

The transactions out of which this litigation arose are numerous and confusing. An attempt will be made here to set forth only the relevant events.

On June 12, 1973, Robert A. Griese and Judith A. Griese, his wife, and Ferris E. Traylor and Mary V. Traylor, his wife, (Grieses and Traylors) personally executed an open-end promissory note to Production Credit which provided for current and future advances of money. A number of transactions occurred and in June, 1976, a balance was due and owing Production Credit in the sum of $116,615.00. At that time the Grieses and Traylors received additional advances totaling $160,800.00 and the same was used to purchase two tracts of real estate. $56,700.00 was used to purchase a tract from Production Credit itself, and $103,504.48 was used to purchase a tract from a third person. Both tracts were conveyed directly by the owners to Griese-Traylor Corporation, and Production Credit paid the purchase price directly to the third person. As security the Grieses and Traylors individually, and Griese-Traylor Corporation executed and recorded mortgages to Production Credit on each parcel of real estate to secure not only the $160,800.00, but also the previous balance on the open-end note. The corporation did not incur individual liability for any funds on the open-end note.

On November 14, 1978, the Lemmons were awarded a money judgment which became a lien on that date against Griese-Traylor Corporation in the amount of $35,-

1. Other named defendants appear in the caption of this cause, however, only the Lemmons have filed an appellees' brief.

350.54. *Griese-Traylor Corporation v. Lemmons,* (1981) Ind.App. 424 N.E.2d 173. That judgment grew out of a stock purchase agreement entered into between the corporation and Lemmons in 1974.

Subsequently, the Grieses and Traylors defaulted on the note and Production Credit commenced its foreclosure action against the Grieses and Traylors, Griese-Traylor Corporation, and the Lemmons. The only contested question involves the priority between Production Credit's mortgage and Lemmons' judgment lien. Both Production Credit and Lemmons moved for a summary judgment. The trial court entered judgment against Grieses and Traylors personally in the sum of $352,992.10, attorney fees in the sum of $15,000.00 and interest. The court then ruled:

"That Plaintiff is entitled to foreclose their judgment against the real estate described in Rhetorical paragraphs 8 and 9 of their complaint in the sum of $56,-700.00 and $103,504.48 respectively as a purchase money lien and any proceeds in excess of said purchase money lien, thereof, shall be paid to the Defendants, Floyd N. Lemmons and Margaret J. Lemmons in payment of their first judgment lien on said real estate."

Upon foreclosure, the court denied Production Credit priority to Lemmons' judgment lien for the pre-existing balance of $116,-615.00, attorney fees and interest. That denial is the sole issue in this appeal.

## DISCUSSION AND DECISION

Production Credit argues that Griese-Traylor Corporation executed a valid mortgage to secure the indebtedness on the open-end note which was duly recorded more than two years prior to the creation of Lemmons' judgment lien.

In response, the Lemmons argue that the mortgages were invalid because corporate assets, without specific authorization, were given to secure the personal debts of officers and shareholders, the Grieses and Traylors, in contravention of IND.CODE 23-1-2-18. No loan ever was made to Griese-Traylor Corporation and the corporation was never an obligor on a note to Production Credit. As a judgment creditor of Griese-Traylor Corporation, Lemmons maintain that they are entitled to the benefit and protection of IND.CODE 23-1-2-18, which provides in relevant part:

"No corporation shall make any advancement on account of services to be performed in the future or shall make any loan of money or property to any officer or director of the corporation."

The first step in the analysis is to determine the validity of the mortgage; in so doing, we shall examine the adequacy of consideration, consideration flowing from a third party, whether Lemmons were bona fide purchasers, priority, and the relevancy of the purchase money lien doctrine to the facts of this case.

A mortgage must be supported by consideration to be enforceable. *Colt v. McConnell,* (1888) 116 Ind. 249, 19 N.E. 106; 59 C.J.S. *Mortgages,* Sec. 87 (1949). Any consideration which will sustain a promise to pay will suffice. *Bretz v. Moenkhaus,* (1930) 90 Ind.App. 603, 169 N.E. 472. It is not necessary that the obligee actually give anything of value to the obligor, and sufficient consideration will be found if it is shown that the mortgagee suffered any damage, inconvenience, detriment or loss, or that he extended any forebearance in reliance upon the mortgage. Consideration exists if it is shown that any right, profit, benefit accrued to the mortgagor, or that responsibility was suffered or undertaken by another. *Bretz, supra; Salt Springs National Bank v. Schlosser,* (1930) 91 Ind.App. 295, 171 N.E. 202; and 59 C.J.S. *Mortgages* Sec. 89. A pre-existing debt or liability is sufficient consideration to support a mortgage given as security, and there need not be a new consideration at the time of making the mortgage. This last point affects the status of the mortgagee as a bona fide purchaser which we will discuss below. *Sodders v. Jackson,* (1942) 112 Ind.App. 179, 44 N.E.2d 310; 59 C.J.S. *Mortgages* Sec. 91. The conveyance of land constitutes consideration. *The Fort Wayne Electric Light*

Company v. Miller, (1892) 131 Ind. 499, 30 N.E. 23.

*Adequacy of Consideration:*

■ Where the thing agreed upon as the consideration has no determined value, the judgment of the parties as to its sufficiency will not be disturbed by the court; and where a party without fraud or deception enters into a contract for consideration and receives all he contracts for, he cannot be relieved on the ground of want of consideration. *Colt, supra, Cook v. American States Insurance Company,* (1971) 150 Ind.App. 88, 275 N.E.2d 832; *Wilson v. Dexter,* (1963) 135 Ind.App. 247, 192 N.E.2d 469; *Cates v. Seagraves,* (1914) 56 Ind.App. 486, 105 N.E. 594.

*Consideration Flowing from and to a Third Party:*

■ It is not necessary that the consideration to support a mortgage flow directly from the mortgagee to the mortgagor, and a benefit may accrue to, or the detriment may be suffered by a third party. *Moehlenkamp v. Shatz,* (1979) Ind.App., 396 N.E.2d 433; *Pierce v. Gas City Lumber Co.,* (1937) 104 Ind.App. 234, 10 N.E.2d 414; 59 C.J.S. *Mortgages,* § 88. A mortgage may secure the debt of another without the necessity of the mortgagor assuming the personal liability of the debt. *Gallagher v. Central Indiana Bank,* (1983) Ind.App., 448 N.E.2d 304. When writings are executed at substantially the same time, and relate to the same subject matters, they must be construed together, and the consideration for one instrument may be found in the contemporaneous instrument. *Torres v. Meyer Paving Company,* (1981) Ind.App., 423 N.E.2d 692.

*Bona Fide Purchaser:*

■ In order to entitle a mortgagee to the status of a bona fide purchaser his mortgage must be supported by valid contemporaneous consideration. 59 C.J.S. *Mortgages,* § 240. A mortgage supported by a pre-existing debt does not constitute the mortgagee a bona fide purchaser

as is necessary to cut off *existing* equities. *Sodders v. Jackson, supra.* However, a note and mortgage as additional security for a pre-existing debt *and* additional advances of money are valuable consideration which will constitute the mortgagee a bona fide purchaser. *State Bank of Downs v. Criswell,* (1942) 155 Kan. 314, 124 P.2d 500; 59 C.J.S. *Mortgages,* §§ 241 and 91; *Glenn on Mortgages,* Vol. 3, Sec. 383 (1943). The basis of the rule is that the mortgagee has irrevocably changed position, always important in the determination of the status of whether a mortgagee is a bona fide purchaser.

In its definitional section, IND.CODE 26–1–1–201(44), the Uniform Commercial Code defines "value", an important factor in determining the status of a bona fide purchaser:

"'Value'. Except as otherwise provided with respect to negotiable instruments and bank collections (Sections 3–303, 4–208 and 4–209) a person gives 'value' for rights if he acquires them

(b) as security for or in total or partial satisfaction of a pre-existing claim."

White J. and Summers R., *Uniform Commercial Code,* p. 915 (1980), are of the opinion, in construing this section, that a creditor who takes a security interest to secure a pre-existing claim gives value.

*Priority:*

IND.CODE 34–1–45–2 provides:

"All final judgments . . . shall be a lien upon real estate . . . where, and only where, such judgment has been duly entered and indexed in the judgment docket as provided by law, from and after the time the same shall have been so entered and indexed . . ."

■ Liens for judgments are subordinate to all prior legal or equitable liens. *Wells v. Benton,* (1886) 108 Ind. 585, 8 N.E. 444; *Foltz v. Wert,* (1885) 103 Ind. 404, 2 N.E. 950; *Jones v. Rhoads,* (1881) 74 Ind. 510. A judgment lien is subordinate to all prior conveyances and *mortgages* and all existing loans and equities in favor of third persons. *Whipperman v. Dunn,* (1890) 124

Ind. 349, 24 N.E. 166; *Warren v. Hull,* (1890) 123 Ind. 126, 24 N.E. 96; 17 I.L.E. *Judgments,* Sec. 469. As against a subsequent equity or transfer, a deed or mortgage will prevail whether the consideration is past or present. *Glenn on Mortgages,* Sec. 383, Vol. 3, p. 1560 (1943).

*Purchase-money Mortgage:*

The trial court awarded the amount of money advanced for the purchase price as a purchase-money lien. A purchase-money mortgage is provided by statute, IND. CODE 32–8–11–4, which provides:

> "A mortgage granted by a purchaser to secure purchase-money shall have preference over a *prior* judgment against such purchaser." (Our emphasis)

The case of *Yarlott v. Brown,* (1925) 86 Ind.App. 479, 149 N.E. 921, recites that a mortgage given at the time of the purchase of the property to secure the purchase money has preference over all other claims then existing against the mortgagor. This rule applies regardless of whether the purchase money mortgage was given to the vendor or a third person who advanced the purchase money. *A vendee executing a purchase money mortgage is not regarded as obtaining title and then placing an encumbrance upon it, but as taking the title charged with the encumbrance which has priority over existing liens.* (Our emphasis)

 The above authorities clearly establish that when Production Credit advanced the purchase price for the real estate and secured that present debt and the pre-existing debt with a mortgage on that real estate, consideration was sufficiently present to support the mortgage. Further, "value" was sufficiently present to establish Production Credit as a bona fide purchaser. According to the authorities outlined above, the fact that the Corporation was not a maker of the note, and did not incur personal liability, is of no consequence because the transfer of the real estate to it was for sufficient consideration to support the mortgage. This transaction was multi-partied, and is indivisible. Lemmons cannot claim bona fide purchaser status because their judgment lien was created two years after the mortgage was recorded, and there is no showing of knowledge in Production Credit of Lemmons' underlying debt. The purchase money lien doctrine is to give a grantor a first lien for the purchase price ahead of *existing* liens against the transferee. Lemmons' judgment lien was created two years after Production Credit's mortgage was recorded.

In summary, we hold that without reference to the argument advanced by Lemmons, Production Credit had a valid and enforceable mortgage against the subject real estate for both the preexisting debt as well as the present debt and was entitled to foreclose upon it. Does the statute, IND. CODE 23–1–2–18, under the facts advanced by Lemmons change that? We think not.

Lemmons cite the following cases in support of their argument that Production Credit wrongfully accepted mortgages on corporate property for money it loaned to the Grieses and Traylors, individually: *Stadium Realty Corporation v. Dill,* (1954) 233 Ind. 378, 119 N.E.2d 893; and *First Merchants National Bank v. Murdock Realty Company,* (1942) 111 Ind.App. 226, 39 N.E.2d 507.

In *Stadium Realty,* a partnership, in exchange for a note and second mortgage, loaned money to Stadium Realty Corporation upon its specific authorization to borrow such money. Subsequently, the corporation loaned back the money to its president in order for him to purchase the partnership's assets. The note and mortgage to the partnership became in default and the partnership brought an action to foreclose on the mortgaged property. The corporation contended that the loan by it to its president was *ultra vires* and void since it violated the statute[2] forbidding loans by a corporation to its officers. The corporation further argued because the partnership

---

2. The preceding statute to IND.CODE 23–1–2–18 contained identical language insofar as the first sentence which we quoted above, and is found under Section 25–212, Burns' 1948 Replacement (Acts 1929, Ch. 215, Sec. 13, p. 725).

knew that the corporation intended to use the loan in an *ultra vires* transaction to its president, the partnership is prevented from recovering on its note and foreclosing the second mortgage. The court held that the officer must pay its loan to the Corporation. The corporation must pay the loan to the partnership. In so holding, the court stated:

"The purpose of this provision (Burns 25–2–12, now IND.CODE 23–1–2–18) of the statute is to protect corporations, their stockholders and creditors.

\* \* \* \* \* \*

The mere knowledge that the lender knew that the borrowing corporation was going to use the money in an ultra vires transaction does not make the loan void. *Wright v. Hughes* (1889), 119 Ind. 324, 331, 21 N.E. 907, 12 Am.St.Rep. 412. Appellant does not contend that a crime was committed, nor should we hold that the partnership must lose its loan because some of the proceeds were used to buy the partnership assets. Eberhard, doing business as Dill Implement and Supply, cannot avoid his liability to Stadium Realty on the ground that the transaction is ultra vires. Stadium Realty has a right of action to collect the loan from its president. This being true, it would be a gross injustice to permit Stadium Realty to avoid its contracts with the partnership Dill Implement Company. Stadium Realty seeks to keep what it obtained, and without making any restitution, rescind its note and mortgage. No statute prohibited the execution of this note and second mortgage. There was no evidence that the partnership defrauded Eberhard by the sale to him, or that it was made upon any inadequate consideration. The partnership was not a party to the contract between Stadium Realty and its president. We therefore conclude that Stadium Realty cannot defeat the action on the note and mortgage under the facts in this record."

233 Ind. at 382–383, 119 N.E.2d 893.

We are of the opinion that this case is not authority for the proposition that because the corporation executed a mortgage under the facts of this case, the mortgage was either illegal and unenforceable in whole or in part. The case states that the mortgage and debt are not void and are enforceable. So the mere fact that Production Credit knew of the transaction did not change that result.

■ Lemmons cites *Murdock, supra,* in support of the trial court's not finding that Production Credit was the holder of valid purchase money mortgages. In *Murdock,* officers of the corporation executed a mortgage on property already owned by the corporation at the time of the disputed loan transaction to secure $85,000.00 of the officers' individual debts. In fact, the mortgaged property, a hotel, was the principal asset of the corporation. At the time of the loan transaction, the lending bank insisted on the execution of a mortgage as security, and the bank even knew that such a guaranty on the part of the corporation was not in furtherance of corporate business. As the *Murdock* court said, it is *ultra vires* of a corporation to enter into contracts of guaranty or suretyship not in furtherance of its business, unless it is given express authority to do so. The court then held that the bank could not foreclose its mortgages upon corporate assets for the purpose of satisfying the individual debts of its officers and directors. *See Crowley v. First-Merchants National Bank,* (1942) 112 Ind.App. 80, 41 N.E.2d 669 (which also recognized the proposition it is *ultra vires* of a corporation to enter into such contracts not in furtherance of its business without express authority).

■ These cases are wholly distinguishable in that the existing assets of the corporation, to which a creditor could look, were used, pledged or encumbered to secure the individual debts of the officers. In the present case, nothing of the sort occurred. The corporation received title to the real estate for which it paid nothing and promised nothing, as part of a simultaneous and indivisible multi-party transaction. As with a purchase money mortgage, the corporation may not be regarded as having obtained title and then having an encum-

brance placed on it, but rather, it has taken title charged with the encumbrance.

As stated in *Stadium Realty,* IND.CODE 23–1–2–18 seeks merely to protect corporate assets existing at the time of the transaction from being dissipated to the detriment of creditors. To conclude otherwise would be unduly restrictive. As Lemmons concede in oral argument, they were not in any worse position after the transaction than they were before, and were not harmed. They argue only that they would lose the benefit of the transaction even though they do not have bona fide purchaser status. We hasten to add that such a windfall would be at the expense of Production Credit, a prior secured creditor. Lemmons' argument seems to assume that Production Credit was somehow a partner or joint venturer with the Griese-Traylor enterprises instead of a secured creditor. Any such assumption is erroneous.

In conclusion, we hold that Production Credit's mortgage was a prior, existing lien ahead of Lemmons' judgment lien for the pre-existing balance on the open-end note as well as the money advanced for the purchase of the real estate. Such mortgage lien would include interest and attorney fees. We order this cause remanded and the trial court is directed to modify the judgment accordingly.

Judgment affirmed in part and reversed in part.

ROBERTSON, P.J., and RATLIFF, J., concur.